18-4-1-1-0 United States v. United Park City Mines Company. Council, we're ready to hear you. Good morning, may it please the Court, Council. I'm Chris Hogel for the Appellants, United Park City Mines Company and Talisker Finance. After decades of successful cooperation on a series of environmental projects, these parties are now before the Court on a limited number of EPA information requests. For over 20 years, United Park has worked cooperatively with EPA on a number of successful environmental projects. United Park's cooperation extended to EPA's information requests. The first set was set back in the 80s and the most recent set, 2016, United Park and Talisker provided a great deal of information to EPA, but they stood on their objections to vindicate their privacy rights to a limited number of those requests because those requests are simply beyond the scope of EPA's authority. We're asking this Court to reverse the District Court's mandatory injunction requiring compliance with all the requests, even the ones that we've answered and they're not pursuing, reverse that injunction. And I would add from my review last night, I think this is the first case before this Court dealing with 104E information requests. So, and I know this Court will apply its scrutiny and the thoroughness with which it's known, for which it's known. The information requests still at issue, the limited number of them, are simply beyond the scope of EPA's authority. The requests at issue are arbitrary and capricious and abuse of discretion and are not in accordance with law. There are limits to EPA's 104E request authority. It's limited by the language of the statute. It's limited by the Fourth Amendment to the U.S. Constitution and EPA bears the burden of proving that the requests fall within its scope of authority. There's two main statutory provisions that I'm going to focus on this morning. One is the limitation for the purposes for which the authority can be exercised in 42 U.S.C. 9604E sub-E sub-1. And then there's the category of information for which EPA sought information and that's section 9604E sub-2 sub-C, which is information relating to the ability of a person to pay or to perform a cleanup. Now, in this case, EPA has indicated repeatedly that the only person whose ability to pay or perform is at issue that they were inquiring about is United Park City Mine Corporation's ability to pay or perform. But the record shows, and it took a while to get out, finally, at the the EPA was not seeking information for purposes of determining the need for a response or choosing or taking a response action or otherwise enforcing the provisions of CERCLA. And it wasn't to seek information about United Park to pay or perform a cleanup. Instead, what they revealed was that the information, quote, was sought, quote, to ascertain whether there is a basis to bring That's at page 675. And at 677, they said, quote, here, of course, the United States is merely seeking information as part of an investigation to determine if such claims might apply, meaning alter ego claims, also fraudulent transfer theories. 9604E1 limits the exercise of the authority to determining the need for a response or choosing or taking any response action under the subchapter or otherwise enforcing provisions of the subchapter. So, in other words, the authority has to be exercised for the purposes of enforcing some of the, you know, some provisions in CERCLA. And wouldn't part of the enforcement involve the ensuring that United Park City could pay for response obligations that they have to the government? Absolutely. Okay. And if that's the case, then why couldn't the court require as to the relationship between United Park City and Talisker? Particularly since they, if I understood it correctly, Talisker took out a loan line of credit in which they essentially used collateral of United Park City. Isn't that right? Well, Your Honor, that's beyond the scope of the motions before the district court. That was not part of the undisputed material facts that was presented to the court. Okay. Well, I don't want to belabor that point then. Let's just back up and say, was it before the district court that there is a financial relationship between these two entities? There is a, yes, that was before the court. Okay. Well, then if, and was it the case that United Park City at a certain point failed to honor their obligations to the government vis-a-vis cleanup? Is that not right? No. That's not, that's disputed. That's not accurate. That was not presented as part of their undisputed fact case in support of their motion. That was in the background section of their motion and that is not conceded. That's disputed. Okay. And in fact, there's other litigation going on right now about that. Okay. So in terms of undisputed facts, would it be your premise that United Park City is honored at every juncture of their obligations vis-a-vis this cleanup to the government? That's our position, yes. And that's what we're defending in a separate litigation matter in the district of Utah. Okay. Okay. Let's assume then that it's disputed, whether they have honored their obligations. As part of an investigation to determine whether you have something to worry about, logic would seem to dictate that the government could inquire as to what's your relationship with those people? I mean, even if we take away the notion that this is undisputed and we say that there's a big question mark. Question mark is, do you have an obligation that will impair your ability to meet your obligation to me, the government? Why is it a legitimate thing to say, I want to know what the answer to that question is? Your Honor, we provided that information. We provided all the information they asked for. And why do they have to take your word for it? You haven't certified, have you, that that is complete information? We have actually certified in interrogatory responses that we have provided the information requested that deals with United Parks' ability to pay or perform. What they're asking for now... Whoa, whoa, whoa, whoa. Yeah. United Parks' ability to pay or perform. Right. But if the question is United Parks' ability to pay or perform is tied up with whatever their financial obligation is to Talisker, then why would it not be an appropriate thing to say, well, you know, that's good that you say you can pay. But if you, if, even if it's disputed, even if it's disputed that Talisker is taking loans and applying collateral of United Park to, you know, to cover their loans, why wouldn't the government have a right to know the answer to that question? Your Honor, we've given them information about United Parks' obligations to whoever they asked about. Anything with respect to United Parks' impaired ability to pay, they have that. We provided that. What we're talking about here is not about United Parks' ability to pay. It's about their ability to seek United Parks' affiliates, pursue claims against them for alter ego and pursuing assets. Let me pose an example that might help. Let's say EPA sends some information requests to Warren Buffett. And Warren Buffett says, wait a minute. I don't have anything to do with the Superfund site. And EPA says, well, Mr. Buffett, you invest in a lot of companies. You have a lot of investments out there. And we're just trying to see if there's any information that we could use under alter ego principles or to pursue corporate transactions that might be fraudulent. There has to be a limiting principle to the scope of this information authority. And here's what it is. And it's in 9604E1. The limiting principle is this. Provided that EPA satisfies the other requirements, EPA can seek information to use to apply or enforce provisions of CERCLA. But what it can't do, where the line is in CERCLA itself, is they can't use, they can't seek information to apply remedies or relief that's available under other statutes or other law, like alter ego or fraudulent transfers. The U.S. Supreme Court said in Best Foods that CERCLA provides no workaround to alter ego. They said the corporate separateness doctrine is a bedrock principle. And CERCLA provides no workaround to that. In the court below... But what we're talking about here is not pursuing a claim. What we're talking about is finding out information that would allow one to know whether there's anything to worry about. Now to the point of, I guess the point I'm making is, let's use your Warren Buffett example. It would seem that the line is one of attenuation. I mean, it's one thing if Warren Buffett is invested in 20 million companies, or let's just, 2,000 companies. And that's it. That's all we know. He's a passive investor in 2,000 companies. But if you have information, even if it's disputed, that suggests that the ability of Park City to comply with its obligations could be impaired because of their to say, okay, all we want to know is if you fall down on your obligation, who are we going to look to? To whom are we going to look to get paid? I mean, I'll stop there and let you respond, but I just don't understand why that is not a logical line of inquiry. Well, because that goes beyond enforcing the provisions of CERCLA. Now you're talking about enforcing provisions of some other statute or some other law. It's about information gathering, though, at this point, not liability. It's information gathering to pursue liability. But the information gathering provision is broad. It is broad. It doesn't restrict it in the sense that you're restricting it right now. It does. It has to be to pursue enforcement of provisions of CERCLA. Not the idea of CERCLA, but the provisions of CERCLA. And they've identified five for the first time on appeal that simply relate to PRPs, not alter egos, not recipients of transfers. Well, let me ask you a question on that, because what I understood you to say at the very beginning was that it would be within the realm of enforcement for EPA to find out whether Park City could pay. Yes. Okay. Well, if Talisker is an alter ego of Park City, then Talisker is Park City, and therefore, they would want to get access to that information to know, for enforcement purposes, whether they can get paid. Why isn't that? Well, that's a big if. Well, that's what we're trying to answer, right? Yeah, but the Best Foods case says you don't get to that if. CERCLA doesn't undo that if. Corporate separateness is a bedrock principle of the law, and CERCLA doesn't do away with that. So when they're asking about the ability of United Park City Mines to pay or perform, that's United Park City Mines, period, unless and until there's a judicial finding that United Park City Mines is also Talisker or whoever else. And that hasn't happened yet. No, because the evidence hasn't been discovered yet, and that's what this case is about. It's not about whether it's admissible evidence, whether it can even lead to admissible evidence. The scope of inquiry is broad. It's broad, but it's limited to enforcing provisions of CERCLA. Of course, that's given. And my point is CERCLA is silent. The Best Foods case says it. It is silent as to veil piercing, right? There might be that opportunity out there, but it's not available under CERCLA, under 104E. Not only under 9604E1, which limits the purposes for which the authority can be exercised, but also under sub E2C, which is limited to information relating to the person's ability to pay or perform, which is United Park in this case. That's clear. And some parent company's ability to pay or perform is not United Park's ability to pay or perform. And the Best Foods case says the bedrock principle of corporate separateness applies in CERCLA. So right now, United Park's ability to pay or perform is confined solely to United Park. That's it. And that's what they can look to. And we provided a lot of information. If there was a judicial determination of alter ego, would CERCLA be a framework in which then the EPA could seek to enforce the obligations of Park City through TALISC? I believe so, provided the other requirements are met. If there's a judicial finding that, hey, United Park isn't just United Park on paper. Yes. It extends beyond. Yes. Yes. Well, if that's true, then isn't this a predicate, a logical step to exercising their enforcement responsibility? I mean, they've got to figure out somehow whether they can enforce the obligation, right? And again, they're not obligated to take your, hey, we got this. It's all good here, Park City says. They don't have to take your word for it. Why can't they find out? Right. And I want to respond to your question, definitely. But I want to reserve a little bit of time for rebuttal. And so in answer to your question, the purpose behind the ability to pay or perform information requests is really to assess whether a settlement candidate would properly or properly conduct the cleanup. You really want to reserve time. You've got to reserve time. Go ahead and finish. I mean, go ahead and sit down, please. OK, sit down. OK, I'll do that. Thank you. Thanks. Thank you. May it please the Court. Brian Patout from the Department of Justice, representing the United States as appellee. District Court's order should be affirmed for three principal reasons. First, EPA's information requests were well within its statutory authority under CERCLA, both under Section 104E1, because they were for the purpose of enforcing the 2014 settlement, which is, in effect, enforcing the statute, and under E2, because they were seeking information related to the ability of the defendants to pay for a cleanup. Second, the requests were within EPA's constitutional authority and the minimal constraints of the Fourth Amendment, because they were reasonably related to the statute's purposes of enforcement for hastening cleanup and ensuring that those responsible for the hazardous waste releases are the ones who are paying. And then finally, the remaining arguments related to injunctions should be rejected. Should we, or do we need to remand to the district court with instructions to more specifically point out what needs to be provided? Or, in other words, is the injunction language itself too broad? I don't think so, because I think at bottom, they haven't certified any of the answers as complete. They could go back on remand, look at the questions. They have the questions. And point to the information they've already submitted, and simply swear that it's based on a complete and thorough search of their records, and it's accurate. That certification would satisfy the injunction. And it wouldn't require going back and looking paragraph by paragraph at what's still disputed. And if you look at the language of the Circula's enforcement provision here, it says that the district court shall direct enforcement of the request. And that is almost literally what the district court ordered, was that they comply with the requests. But I thought the question was they didn't comply, that the injunction as written doesn't comply with Rule 65, right? I think there are two issues. One is the 65d reference to extrinsic documents. Which it does do. It does refer to, you know, the information requests. But, you know, I look at something similar in the discovery context, orders to compel responses to document production, under Rule 37 of the federal rules, are effectively the same type of order. 65d doesn't mention that it's inapplicable to that. But there's no question that the district court doesn't have to set forth some sort of prolix order reproducing all the different requests, when it simply compels enforcement of them. So I think while 65d, it's not a perfect fit with this statutory scheme. And I think that argument should be rejected. There's this separate issue of the narrowness or breadth of the injunction. But I would emphasize that that's reviewed for abuse of discretion. The closest analogy would be any ordinary injunction. We don't have any cases enforcing 104e in the circuit, or any other that I could find related to the injunction issues. But certainly, the over breadth of an injunction is reviewed for abuse of discretion. And so long as the remedy is not so out of proportionate, so disproportionate to the harms that would occur, it's not an abuse of discretion. And is the over breadth related to the fact that they've already disclosed, provided certain things? They claim that they have. And it's related to that argument. And but they haven't cert, they haven't cert, am I correct that they have not certified anywhere that this is in fact a complete supply as it relates to x items? That's correct. And what they point to in my friend's argument today was the discovery certification on, and you'll see an example of it on appendix page 365. It says, it's long, but it says these answers are limited by the records and information thus far discovered in the course of preparation of these answers. That's not a certificate of completeness of a thorough search. It also says, this is for Talisker, Talisker reserves the right to change or supplement said answers. That's not what we're looking for here. And the certification requirement's important for three different reasons. You know, first, it serves a practical function of allowing EPA to be able to rely on the answers, to not have to go back and ask the same questions of different entities, different parties, multiple times. It can take these answers for what they're worth as a complete and thorough search and assessment and that they're accurate. Second, it emphasizes to the respondent to the requests, the seriousness of responding that they do so truthfully, accurately, and based on a complete and thorough response. And third, it supplies the willfulness element or the knowledge element. Should they make a material misstatement to EPA under section 1001 of 18 USC, they could be prosecuted for a knowing misrepresentation or misstatement to a federal agency. It's a criminal matter. So it serves a number of important functions. They haven't fulfilled it, and I think that's enough to demonstrate that the district court's order was not an abuse of discretion. Can you go back to the enforcement of surplus provisions? You mentioned how this would relate. He says it doesn't relate to any particular enforcement action. And you say, I think you said the settlement agreement itself, that it relates to that. Can you walk me through that? So the 2014 administrative settlement between EPA and UPCM required UPCM to pay the government's response costs at the site, among other things. We do have a separate civil action that the government brought in March of this year for violations of that settlement agreement, including for failure to pay approximately $900,000 in the government's response costs. If you look at the declaration of Dr. Joan Meyer from the government submitted here, particularly the version that's under seal, you'll see detailed allegations about the The publicly available knowledge is that, as Judge Holmes pointed out, there was a lending relationship, and some of UPCM's assets were foreclosed upon by a third-party lender to satisfy a debt to Talisker. And that happened around the same time that Well, I understand that. I guess I understand that argument, but I don't see how that relates to this particular action. So the government sought You're saying there's a separate enforcement action? Right, to enforce the settlement agreement. Because enforcing the settlement agreement is done under a statutory provision of CERCLA, it's ineffective for enforcing the statute. Now, the distinction I think they're trying to make is that we're talking about assets that were transferred away, potentially. We are seeking information about those transfers and about whether UPCM, when transferring assets, obtained the full value, the fair value for whatever transactions it made. And if it didn't, there may be different theories by which the government could seek to recover those assets to satisfy the costs that UPCM owes to the government under the settlement agreement. So your request, you're saying it doesn't relate so much to the alter ego issue as much as it does to just their own financial stability or their own financial condition now, and how that might depend on their obligations to the parent company. I think it's both. Alter ego is one theory by which we can recover assets. It had been transferred away from the company that's in the settlement agreement, UPCM. There are other state law-based theories. It really depends on the facts. If there were fraudulent transfers, you may be able to unwind those transactions. Whether, as a formal matter, the government has to join the transferee that now holds the assets, it's the party, to the suit in order to get the assets back. It just depends on the facts. Maybe the transactions are unwound and somehow held by the court in some constructive trust for UPCM. They're trying to play a shell game here, and I would urge the court to reject that. CERCLA was amended in 1986 specifically to include expressly the ability of the EPA to obtain information through 104E about a person's ability to pay. If you look at the district court case underlying the Charles George Trucking Company case we cited from the First Circuit, that district court case held that under the former version of 104E, which didn't include this language about a person's ability to pay or perform a cleanup, the EPA couldn't get that information because the prior version of the statute simply was talking about information related to the cleanup of hazardous substances. And that district court and some other courts said financial information, it may help in the enforcement of the statute, but it's not related to a hazardous substance. Congress amended the statute. They made it broader. So the point here is that you can look at the text of the statute, and it is quite broad just on its own reading, but the statutory history as well bolster a broad view of the provision. Could I just clarify one point? At least I understood opposing counsel to say that within the scope of CERCLA, there was not an alter ego concept. I mean, referring to Best Foods, I think a notion that there wasn't such a thing. I take it your position is that in this other action where you're seeking to enforce the settlement agreement, since the settlement agreement was formed under CERCLA, that in fact, this sort of alter ego theory, one theory, is a theory that's being pursued through CERCLA. Is that? Yes. And in addition, that's right. I think that's one way of viewing it. And I think, tell me if I'm not getting completely to your question, but this is an investigatory tool. And until the government has the facts to support a theory to pierce the corporate veil, it can't do that. Well, yeah, and what I guess I'm getting at is this. The understanding I had from the opposing argument was simply that, yes, it is true that you can seek as a matter of enforcement to find out information about a responsible party. You can get that financial information, in this case, Park City. But there is no vehicle within the rubric of CERCLA to get information about a third party so that you can find out information about that party. In other words, the statute doesn't contemplate that. And so that's what I understood to be said with reference to, I think it was Best Foods was the case it was referenced. So I guess I could ask you first, do you agree with that? I don't. I think that's a bit of a misstatement of a very difficult area of law. I mean, I think Best Foods related to a number of different issues. Direct liability of a parent corporation for the acts of subsidiary was at issue. And the court said, well, if the parent was directly an owner or operator of the facility, it can be held liable under CERCLA. That's not what we have right here. We're not talking about that. We're talking about relying on state law doctrines of corporate form. But you are talking about a corporate piercing theory as a theory, right? Yes. Okay. Well, I guess what I'm saying is that let's assume that the notion is that you can't directly invoke the premise under CERCLA of piercing the corporate veil. I guess that's what Best Foods would be suggesting vis-a-vis the subsidiary and the parent. In other words, you can't go after the parent because the subsidiary is a principal, is a responsible party. Okay. Well, even if that's true, could not one make the argument, and this is what I understood your argument to be earlier on when talking to Judge Moritz, is that even apart from that, if we have a settlement agreement that is a CERCLA settlement agreement, then we are in effect of forcing our rights under CERCLA when we seek information about TASC, Talisker, or whatever the company is. That's right. Is that? Yes, that's right. I can point you to 42 U.S.C. section 9622 D3 and 9622 L. We made a typo in our brief. It should be 9622 L, not 9611 L, as well as 9609 C5. These all provide causes of action or penalty assessments of civil penalties for violations of settlement agreements. Those are provisions under the statute where the United States may bring a cause of action for a violation of a settlement agreement to obtain penalties or to enforce the agreement, and that is what we're doing here. Unless the court has any further questions, we would ask that the district court's judgment below be affirmed. Thank you, counsel. You were desperately trying to save some time. Let's extend the remaining time that the government gratuitously has given to you with one and a half minutes. Thank you, your honors. Thank you. Just following up on what was said last, counsel for the United States indicates that they're relying on state law doctrines. That's not CERCLA. That's not enforcing the provisions of CERCLA, and I think that could be the limiting principle that we need to make sure that EPA acts within its statutory authority and to prevent unauthorized intrusions into privacy rights. That's all I'm saying, and I want to touch on the certification requirement. There is no certification requirement, right? There's nothing in CERCLA or anywhere. The district court didn't say, please certify that you gave us all the information. There's no requirement. It's their burden of proof. This certification argument is an attempt to sort of flip the burden of proof. They have the burden of proving this. They have the burden of proving the request to which consent was not granted. I guess their argument is that there is no way they have to know that they've received complete information based upon what you have told them to date, and the only way they can get that is to put you under penalty, both under 1001 penalty, but also under contempt penalty relative to an order from the court to get that level of confidence. Well, if it were me, I'd take a 30B6 deposition of the company. Have you given me this? Have you given me that? Did you look here? Did you look there? That's what I would do. And why do they need to do that is what they're saying. They're saying that they can do it under this statute. The statute doesn't impose a certification requirement. What the statute imposes is a burden of proof on them to show requests to which consent was not granted. And with that, I'll submit it. Thank you. Thank you. Case is submitted. Counselor excused.